**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

NICHOL TOWNSEND,
THE ESTATE OF MILTON TOWNSEND, BY AND THROUGH ITS PERSONAL REPRESENTATIVE NICHOL TOWNSEND,

    Plaintiff,

v.

CORECIVIC, INC. a/k/a CORECIVIC OF TENNESSEE, LLC d/b/a CROWLEY COUNTY CORRECTIONAL FACILITY,
OFFICER RILEY,
UNIT MANAGER HANSEN,
CASE MANAGER ORTIZ,
OFFICER PALAMINO.
WARDEN BARRY GOODRICH,
JOHN OR JANE DOE OFFICER,
JOHN OR JANE DOE OFFICER,

    Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

COME NOW, Plaintiffs Nichol Townsend and the Estate of Milton Townsend by and through its Personal Representative, Nichol Townsend, and counsel Cheryl Trine of Trine Law Firm LLC, and allege and complain as follows:

**INTRODUCTION**

1. This is an action for damages and attorney's fees and costs, for the wrongful death of Milton Townsend, and the violation of Milton Townsend's constitutional rights when his requests to have a new cellmate assigned for safety reasons were ignored and he

was beaten to death by his cellmate, which was also ignored. The Warden then lied to Nichol Townsend about the cause of her husband's death, claiming it was a heart attack.

## JURISDICTION

2. This action arises under Title 42 U.S.C. §§ 1983 and 1988, and the Eighth Amendment to the Constitution of the United States. Jurisdiction is conferred pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction to consider state causes of action under 28 U.S.C.A. §1367, for ancillary state claims which "form part of the same case or controversy" as other counts for which this Court has established jurisdiction.

## VENUE

4. Venue properly lies in the District of Colorado pursuant to 28 U.S.C. §1391(b). All the events alleged herein occurred within the State of Colorado, and the parties were residents of the State at the time of the events giving rise to this Complaint.

## PARTIES

5. Plaintiff Nichol Townsend is a resident of the state of Colorado, and a citizen of the United States. She is the Personal Representative of the Estate of Milton Townsend. She was Milton Townsend's wife and is the mother of their children. She has been a registered nurse for over thirty years, works in a hospital, and volunteers doing home health care for low-income people. Nichol and Milton Townsend were high school sweethearts.

6. At all times material, Defendant CoreCivic, Inc. a/k/a CoreCivic of Tennessee, LLC d/b/a Crowley County Correctional Facility ("CoreCivic") was a Tennessee Corporation with its principal place of business at 5501 Virginia Way,

2

Brentwood, Tennessee 37027. It has operated the Crowley County Correctional Facility (CCCF), a medium security prison at 6564 State Hwy. 96, Olney Springs, CO 81062 since 1998, and purchased the facility in 2003. Its registered agent is CT Corporation System at 7700 E Arapahoe Rd Ste 220 Centennial CO 80112-1268. It operates under contract with the Colorado Department of Corrections to house Colorado inmates in order to make a profit for shareholders and investors. It is required by law to adhere to Colorado rules and regulations. CoreCivic is the largest private, for-profit prison operator in the U.S.

7. At all times material, Defendant Officer Riley was a resident of the state of Colorado, and an employee of CoreCivic, acting under color of state law, and within the course and scope of their employment.

8. At all times material, Defendant Unit Manager Hansen was a resident of the state of Colorado, and an employee of CoreCivic, acting under color of state law, and within the course and scope of their employment.

9. At all times material, Defendant Case Manager Ortiz was a resident of the state of Colorado, and an employee of CoreCivic, acting under color of state law, and within the course and scope of their employment.

10. At all times material, Defendant Officer Palamino was a resident of the state of Colorado, and an employee of CoreCivic, acting under color of state law, and within the course and scope of their employment.

11. At all times material, Defendant Warden Barry Goodrich was a resident of the state of Colorado, and an employee of CoreCivic, acting under color of state law, and within the course and scope of his employment. He is the final policymaker for CoreCivic at the CCCF.

12. At all times material, Defendants John or Jane Doe Officers 1-2 were residents of the state of Colorado, and employees of CoreCivic, acting under color of state law, and within the course and scope of their employment.

13. At all times material, CoreCivic had a duty to hire an adequate number of staff pursuant to its independent legal duties and its contract with the state, and to implement Colorado Department of Corrections (DOC) regulations, policies, and procedures, as well as adequately train, supervise, and discipline staff to protect inmates including Milton Townsend.

**FACTUAL ALLEGATIONS**

14. Milton Townsend was transferred to CCCF on April 7, 2024. He was 54 years old, stood five feet six inches tall, and walked with a walker due to diabetic neuropathy. He was set to be released by December 27, 2023.



4

15. CCCF is a medium security prison. It has a duty to classify prisoners upon arrival to CCCF based on their security threat, and to house them in a manner that protects the prisoners, staff, and the public.

16. CCCF has a reputation under CoreCivic of letting or even encouraging inmates to fight, and of not breaking up fights.

17. CCCF knew that Milton Townsend was part of a vulnerable population in part due to his age and health.

18. Nonetheless, CCCF housed him with a younger man, Patrick A. Gomez, who was known to be violent.

19. Patrick A. Gomez was convicted of kidnapping, and prior to that, of domestic violence.

20. Based on information and belief, CoreCivic knew of complaints about Mr. Gomez from other cellmates, about anger issues, about violent tendencies, and that Mr. Gomez had disciplinary violations pertaining to violence.

21. Mr. Gomez began bullying Milton Townsend when CCCF housed them together, including stealing from Mr. Townsend.

22. This is the type of situation known to result in violence if not addressed by staff.

23. It was the widespread custom of CoreCivic at CCCF to refuse requests for cellmate reassignment absent evidence of a physical altercation, despite the substantial risk of serious harm including death from a physical altercation.

24. In addition, CoreCivic had a widespread practice of purposefully encouraging and/or allowing inmates to fight without timely intervening, despite the

known risk of injuries and death. Many inmates will attest to this widespread pattern and practice at CCCF, and it was known to each Defendant including the Warden, who directed the practice or acquiesced in allowing it to continue despite the substantial risk of serious harm to inmates from ignoring tensions and allowing or even encouraging fights among inmates.

25. CCCF was regularly understaffed and its corrections officers regularly failed to perform cell checks for the safety and security of inmates as required.

26. Milton Townsend complained to Defendants Riley, Hansen, Ortiz, Palamino and John or Jane Doe officers 1-2, requesting that he be assigned a different cellmate for his protection.

27. Based on information and belief, on or around July 13, 2024, Milton Townsend requested for his safety from Defendant Officer Riley that a different cellmate be assigned to him. Defendant Riley refused to do anything to protect Mr. Townsend.

28. Based on information and belief, on or around July 16, 2024, Milton Townsend requested for his safety from Defendant Unit Manager Hansen that a different cellmate be assigned to him. Defendant Unit Manager Hansen refused to take any action to protect Mr. Townsend.

29. Based on information and belief, on or around July 20, Milton Townsend requested for his safety that a different cellmate be assigned to him from Defendant Case Manager Ortiz, who refused to do anything to protect Mr. Townsend.

30. Based on information and belief, on or around July 27-30, Milton Townsend and another inmate requested that a different cellmate be assigned to Milton

Townsend from Defendant John or Jane Doe Officers 1-2. They refused to take any actions to protect Mr. Townsend.

31. Based on information and belief, between mid to late July, 2023, Milton Townsend notified Defendant Officer Palamino, and/or other officers notified Defendant Palamino that Mr. Townsend was requesting a new cellmate be assigned for safety reasons, and yet Defendant Palamino took no action to protect Mr. Townsend.

32. Based on information and belief, Mr. Townsend continued to request a different cellmate be assigned to him from these Defendants, and he was told there would have to be a physical assault before they would assign a different cellmate or take any action to protect him.

33. On or around August 2, 2023, Mr. Townsend informed other inmates that he had been asking Defendants Riley, Hansen, Ortiz, Palamino, and the John or Jane Doe officers for about three weeks to assign him a different cellmate for his protection without any success, and that he would likely be assaulted by his cellmate.

34. The evening of August 2, 2023, people in the cells above and around Milton Townsend could hear through the vents that his cellmate was beating him.

35. Based on information and belief, the officers on duty also heard the beating.

36. Based on information and belief, the officers on duty either failed to perform their rounds as required due to being understaffed, and/or they performed their rounds and knew that Milton Townsend was being or had been beaten, but they did nothing to help him.

7

37. The morning of August 3, 2023, people in the cells above and around Milton Townsend heard what sounded like Mr. Townsend's cellmate kill him.

38. It was only after lockdown ended when an inmate was able to get into Mr. Townsend's cell and to notify CoreCivic, that CoreCivic employees took action to help Mr. Townsend.

39. Medical response was called to his cell at 7:00 a.m. on August 3, 2023.

40. Medical found him "unresponsive" on his bunk with face trauma, agonal sporadic breathing with accessory muscles, and pupils responsive to light.

41. Being unresponsive with agonal sporadic breathing is an obvious medical emergency but CoreCivic failed to contact Emergency Medical Services (EMS).

42. Instead, Mr. Townsend was moved to medical on a gurney.

43. Mr. Townsend had an obvious deformity to his face and blood coming from his mouth as well as being unresponsive.

44. At 7:18 a.m., after Mr. Townsend was moved to medical, CoreCivic finally notified EMS.

45. At 7:26 a.m., Mr. Townsend stopped breathing on his own, and corrections officers began CPR.

46. At 7:42 a.m., an EMS technician arrived in medical.

47. CoreCivic employees told EMS that Mr. Townsend was found on the floor and had apparently fallen, which according to their own documentation was not true.

48. CoreCivic employees documented a rise in Mr. Townsend's blood oxygen levels from 66% at 7:45 a.m. to 79% at 7:49 a.m. after an EMS technician took over CPR.

8

49. When the EMS paramedic arrived at 8:03 a.m., Mr. Townsend had Pulseless Electrical Activity (PEA) which means there was some electrical activity in his heart but no pulse. He had 0% blood oxygen.

50. Effective medical treatment during the first few moments of PEA is especially critical to save the person's life.

51. At 8:17 a.m., the paramedic ordered CPR to stop and declared that as the time of Mr. Townsend's death. They had to respond to another emergency.

52. Whenever an inmate dies unexpectedly in custody, especially from traumatic injuries, the Department of Corrections (DOC) in conjunction with CoreCivic is required to perform an investigation into the cause of the inmate's death.

53. Almost a year after her husband's death and despite many requests, the DOC and CoreCivic continue to refuse to provide a copy of any investigation to Nichol Townsend, as well as other relevant records and video.

54. The DOC and CoreCivic have refused to produce any of the video of Mr. Townsend, including body camera video of his location in his cell when he was discovered as well as rescue efforts, interviews with witnesses, officer logs, photographs, and other relevant records.

55. Nichol Townsend has not been able to obtain the autopsy report and photos despite many requests from the coroner.

56. It took the coroner five months to complete the death certificate.

57. The death certificate states that the cause of death is blunt force trauma to the head, and manner of death is homicide.

58. Based on information and belief, Defendant Warden Goodrich knew it was the widespread custom or practice at CCCF to be understaffed, to not conduct adequate cell checks, and to refuse to reassign cellmates unless there was a physical altercation even if one cellmate was requesting reassignment due to concerns over safety because as the final policy maker and top of the chain of command, he knew of and/or established staffing levels and he established or ratified the unconstitutional policies or customs. For the same reasons, Defendant Goodrich knew that it was the widespread custom or practice at CCCF to allow inmates to fight without timely breaking them up or providing medical care timely to inmates injured in a fight. He knew that Mr. Townsend was murdered by his cellmate after requesting many times from multiple CoreCivic employees at CCCF that his cellmate be moved in order to protect him from violence and that no officer intervened to stop the violence, and yet he told Nichol Townsend that her husband died of a heart attack to cover up these unconstitutional practices.

59. An audit by the U.S. Department of Justice Office of the Inspector General in 2016 detailed widespread staffing deficiencies, inadequate medical care and unchecked violence at CoreCivic facilities across the country. The company's own shareholders sued the firm that same year for misrepresenting staffing levels and quality of medical care provided to inmates. CoreCivic continues to be understaffed, with unchecked violence and inadequate medical care.

60. A 2019 analysis by the No Exceptions Prison Collective and the Human Rights Defense Center showed the murder rate at CoreCivic's Tennessee prisons is four times that of penal facilities operated by the Tennessee Department of Corrections. It is expected the same would be true in Colorado if an adequate reporting was required,

which is likely why Warden Goodrich attempted to cover up the cause of Mr. Townsend's death, calling it a heart attack.

61. On September 7, 2021, Laeddie Coleman, an inmate at Hardeman County Correctional Facility which is run by CoreCivic, was beaten and stabbed to death by other inmates in his unit, which was chronically understaffed, and CoreCivic refused to release information about his death to his father. *Tardy v. CoreCivic of Tenn., LLC*, 3:22-cv-00681, (M.D. Tenn. Sep. 26, 2023). Records reviewed by the newspaper, Tennessee Lookout show the pod was not being monitored by prison guards at the time, even though another inmate had been stabbed in the same pod less than one hour before the attack on Coleman.

62. CoreCivic settled a lawsuit brought by G. Marie Newby, the mother of inmate Terry Childress, who died in February 2021 after his cellmate assaulted him due in part to low staffing levels and the failure of correctional officers to make timely rounds. *Newby v. CoreCivic of Tennessee, LLC et al.*, 3:22-CV-00093. Mr. Childress was murdered in his cell shortly before he was set to be released from prison, and was murdered by his violent and misclassified cellmate, Tymothy Willis. The cause of his death was "blunt force injuries of the head" and the manner of death was "homicide" just as is the case with Milton Townsend. Video surveillance confirmed that corrections officers were not making timely rounds at the time of Mr. Childress's murder. CoreCivic has refused to provide video or any records of officer surveillance during Mr. Townsend's murder, but based on information and belief, the same is true for Mr. Townsend. CCCF was severely understaffed in order to make a profit for CoreCivic.

11

63. In July of 2021, Joshua Braddy was stabbed in a CoreCivic facility in Leavenworth, Kansas following a number of violent attacks, including the beating of a detainee and stabbing of two correctional officers in February 2021, because the facility, which housed federal detainees under contract with the US Marshall Service, was "understaffed, and insecure." *Braddy v. Sells,* Kan. Dist. 29 (Wyandotte Cty.), Case No. 2023-cv-000418.

64. Prisoners Jason Tillery and Jerry Lanier filed suit in 2023 alleging CoreCivic prisons were understaffed and allowed inmates to be repeatedly assaulted in 2022. *Tillery et al. v. CoreCivic, Inc. et al.*, 3:23-cv-00203, (M.D. Tenn. Jan. 31, 2024). They alleged they were assaulted, one of them repeatedly, at two different CoreCivic prisons due to the practice of being understaffed.

65. In *Craig v. CoreCivic, Inc.*, 2024 WL 1117045, at *10 (E.D. Okla. Mar. 14, 2024), Mr. Craig asked to be reassigned because he felt unsafe with his current cellmate. CoreCivic refused to reassign him, and people in cells around him heard him being beaten. CoreCivic staff failed to respond. Mr. Craig died of blunt force trauma to the head. Two witnesses including the 30(b)(6) witness for CoreCivic admitted that it had a custom of not reassigning cellmates until there was an assault.

66. A CoreCivic employee sued the company after he was stabbed due to being regularly isolated with inmates for long periods of time due to staffing shortages in violation of the prison's policy. *Michael Schneider v. CoreCivic of Tennessee, LLC*, 23-cv-02261, Ohio Northern District Court. He was stabbed after calling for back-up and no one came. When he filled out worker's compensation paperwork three days later, the assistant warden told him he could resign or quit.

12

## FIRST CLAIM FOR RELIEF

### (Deliberate Indifference – Defendants Riley, Hansen, Ortiz, Palamino, Goodrich, John or Jane Doe Officers 1-2 by Plaintiff Estate of Milton Townsend )

67. All of the above allegations are incorporated herein by reference.

68. At all times relevant, Defendants were acting under color of state law and within the scope of their employment.

69. The Defendants each were deliberately indifferent to a substantial risk of serious harm, which consisted, *inter alia,* in the following:

(a) Defendants Riley, Hansen, Ortiz, Palamino, and John or Jane Doe Officers 1-2 each knew that Decedent Milton Townsend was requesting, for his own safety, assignment to a different cellmate because of the risk of assault. Each Defendant knew that Mr. Townsend was elderly, in poor health, and used a walker, and that his assigned cellmate was younger, in good health, and had violent tendencies. Each Defendant told Mr. Townsend in essence that there would have to be a physical assault before they would assign a different cellmate or take any action to protect him, despite the obvious substantial risk of serious harm posed by such an assault, which in this case killed Mr. Townsend. They did not take any reasonable measures to abate the serious risk of assault and death. In addition, each Defendant present on August 2-3, including Defendant Riley and John or Jane Does 1-2 was deliberately indifferent to the beating of Mr. Townsend by failing to intervene and/or failing to contact medical in a timely manner during the beatings or shortly thereafter, which caused a worsening of Mr. Townsend's condition and eventually his death on August 3, 2023.

(b) Defendant Warden Goodrich in his supervisory capacity directed, authorized, acquiesced in, or possessed responsibility for the practice or custom of being

13

purposefully understaffed to make CoreCivic a profit, and of corrections officers of all ranks ignoring requests for cellmate reassignments unless there had been a physical assault, despite the obvious substantial risk of serious harm such a physical assault posed, which in this case was a cause of Mr. Townsend's death. *Dodds v. Richardson*, 614 F.3d 1185, 1195, 1199 (10th Cir. 2010). In addition, he directed, authorized, acquiesced in, or possessed responsibility for corrections officers of all rank purposefully allowing inmates to fight without breaking up those fights, and without transporting inmates injured in such fights to medical in a timely manner to treat their injuries, which in this case was a cause of Mr. Townsend's death.

70. As a result of each of the forgoing Defendants' deliberate indifference, Mr. Townsend was injured and damaged in the following particulars:

(a) Physical and mental pain and suffering, anxiety, fear, loss of life, stress, distress, emotional distress, and humiliation.

(b) Loss of future income and/or earning capacity.

(c) Burial, transport costs, and funeral expenses.

71. Each Defendant's conduct was a direct cause in whole or in part of Mr. Townsend's injuries and damages, which are indivisible, resulting in joint and several liability.

72. The conduct of each of the Defendants was undertaken in reckless disregard of Mr. Townsend's constitutionally protected rights entitling him to punitive or exemplary damages against each of the Defendants pursuant to 42 U.S.C. § 1983.

73. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, prejudgment interest and costs as allowable by federal law.

**SECOND CLAIM FOR RELIEF**

**(Municipal Liability – Defendant CoreCivic by Plaintiff Estate of Milton Townsend)**

74. All of the above allegations are incorporated herein by reference.

75. Defendant CoreCivic had a policy or widespread custom of understaffing CCCF in order to make a profit, and of denying prisoners' requests for assignment to a different cellmate for their safety unless or until there was a physical assault as evidenced by numerous CoreCivic employees refusing Mr. Townsend's requests over a three-week period, as well as evidence from other CoreCivic facilities of those practices. In addition, Defendant CoreCivic had a policy or widespread custom of encouraging fighting amongst inmates and/or not intervening to stop the fighting in a timely manner as observed by numerous witnesses at CCCF, as well as other CoreCivic facilities. These unconstitutional policies or customs were the moving force in causing Mr. Townsend's injuries and damages.

76. CoreCivic had actual or constructive notice that the above policies or customs were substantially certain to result in a constitutional violation because it has been sued over these policies or customs many times, and because being understaffed and requiring that someone be assaulted before CoreCivic would assign a different cellmate is a policy or custom that is substantially certain to result in serious injury, including death, especially when CoreCivic does not timely intervene to stop assaults. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). The violation of federal rights in this situation is a highly predictable or plainly obvious consequence of CoreCivic's policy or custom of being routinely understaffed and knowingly forcing people who complain of the risk of assault, to be assaulted before CoreCivic will take reasonable measures to protect them - if

15

they survive the assault despite the failure of CoreCivic to prevent it, to stop it, and to timely provide access to medical care afterwards. No changes were made after Mr. Townsend's death to these CCCF practices and customs because they were the official operating procedure at CCCF, and instead CoreCivic attempted to cover up the cause of Mr. Townsend's death.

77. Defendant CoreCivic routinely failed to adequately staff CCCF, and it failed to adequately train, supervise, and discipline, its employees to reassign cellmates to protect inmates at risk of assault, serious injury, and death without first requiring one of those inmates be physically assaulted. This is a situation that regularly confronts CoreCivic employees in the prison, and CoreCivic was deliberately indifferent to the need for adequate training, supervision, and discipline of its employees to protect the safety of inmates in their cells, to stop assaults, and to timely provide access to qualified medical providers following assaults.

78. Defendant CoreCivic's conduct was a direct cause in whole or in part of Mr. Townsend's injuries and damages.

79. As a direct result of the unconstitutional policies, procedures, practices, and widespread custom, and/or lack of training, supervision, and discipline as described *supra*, Mr. Townsend suffered injuries and damages as described in Paragraph 70.

80. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, prejudgment interest and costs as allowable by federal law.

81. The conduct of Defendant CoreCivic was undertaken in reckless disregard of Mr. Townsend's constitutionally protected rights entitling his estate to punitive or exemplary damages.

## **THIRD CLAIM FOR RELIEF**

**(Wrongful Death – All Defendants by Plaintiff Nichol Townsend)**

82. All of the above allegations are incorporated herein by reference.

83. The Defendants each had a duty to take measures to protect Milton Townsend from being physically assaulted by his cellmate, injured, and killed in prison. Mr. Townsend had no way to protect himself, and was forced to rely on the Defendants to protect him from assault by other inmates, to timely perform rounds and check on inmate safety, to intervene to stop assaults in a timely manner, and to provide medical care by a qualified medical provider (in this case EMS) without delay. Defendant CoreCivic had a duty to be adequately staffed, and to ensure that officers were conducting rounds and checking on the welfare of inmates including Mr. Townsend approximately every half hour. Defendant CoreCivic had a duty to adequately staff, train, supervise, and discipline its employees to reassign cellmates to protect inmate safety, to intervene when an inmate is being assaulted to stop the assault, and to provide access to a qualified medical provider including EMS without delay. Defendant Warden Goodrich had a duty to honestly and accurately inform Nicol Townsend about the cause of her husband's death, and to adequately investigate it and other deaths to prevent the wrongful death of inmates, including Mr. Townsend.  Defendant Goodrich had a duty to adequately maintain staffing levels, and to adequately train, supervise, and discipline CCCF employees in the performance of their duties, including reassigning cellmates to protect inmate safety, performing welfare checks, ending assaults, and providing timely access to qualified medical providers including EMS.

84. The Defendants were each negligent in failing to reassign Milton Townsend a different cellmate when Mr. Townsend complained about being in danger of assault; in failing to timely intervene to stop the assaults that began the evening of August 2, 2023, and continued into the morning of August 3, 2023; and in failing to contact medical and/or EMS without delay. Defendants CoreCivic and Warden Goodrich are each additionally negligent in routinely understaffing CCCF, maintaining unconstitutional policies and customs as described *supra*, and failing to adequately train, supervise and discipline employees as described *supra*. Each Defendant is liable for their own acts of negligence that, in conjunction with the negligence of the other defendants, caused Milton Townsend's wrongful death. Defendant Warden Goodrich was negligent in lying to Nichol Townsend about the cause of her husband's death and then further acting to prevent her from obtaining accurate information, which caused her immense emotional distress and anguish.

85. Each Defendant's negligence was a cause of Plaintiff's injuries and damages in whole or in part.

86. By operation of law under the doctrine of *respondeat superior,* the negligence of each of these individual Defendants is imputed to Defendant CoreCivic.

87. As a result of the negligence of the Defendants, Plaintiff Nichol Townsend has been injured and damaged in the following particulars:

    (a) The past and future loss of the care, companionship, and society of her husband and father of their children, and the loss of their life together with extended family, friends, and community.

    (b) Non-economic damages consisting of past and future pain and suffering, mental and emotional anguish, grief, loss, isolation, loss

18

of enjoyment of life including grief on every holiday and special occasion that should be joyful, emotional distress, and betrayal.

(c) Economic damages including future lost wages, burial expenses, and costs associated with Mr. Townsend's death and burial.

88. Plaintiff Nichol Townsend reserves the right to seek exemplary damages after sufficient discovery has been completed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against the Defendants in an amount which will fairly compensate the Plaintiffs for all injuries and damages as heretofore set forth, together with pre-judgment and post-judgment interest, litigation costs including expert witness fees, attorney fees pursuant to § 1988, punitive or exemplary damages pursuant to §§ 1983 and 1988, and for such other and further relief as the Court may deem just and equitable.

DATED this 4th day of August, 2024.

Respectfully submitted,

/s/ Cheryl Trine
Cheryl L. Trine, #38150
Trine Law Firm LLC
155 E. Boardwalk Drive #400
Fort Collins, CO 80525
Phone: 970-391-9442
Fax: 970-458-1800
Email: ctrine@trinelaw.net

**PLAINTIFF DEMANDS A JURY TRIAL TO A JURY OF SIX.**

Plaintiffs' Address:

Nichol Townsend
835 S. Joplin Cr.
Aurora, CO 80017